Rhonda J. ROSE, Plaintiff–Appellant,

v.

UNITED STATES of America and
United States Postal Service,
Defendants–Appellees.

No. 88–15431.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1989.

Decided June 8, 1990.

Charles M. Greenberg, Ulin, Dann, & Lambe, Seattle, Washington, for plaintiff-appellant.

Joseph P. Russoniello, U.S. Atty., Stephen L. Schirle, Asst. U.S. Atty., San Francisco, Cal., for defendants-appellees.

Before CHAMBERS, POOLE and WIGGINS, Circuit Judges.

POOLE, Circuit Judge:

Appellant, Rhonda Rose, filed suit against the United States Postal Service (Postal Service) alleging failure to maintain accurate and timely records in violation of the Privacy Act, 5 U.S.C. § 552a(g)(1)(C), which she claims caused delay in her receipt of worker's compensation benefits and thereby caused her permanent physical disability. She appeals the district court's grant of summary judgment in favor of the Postal Service.* We affirm.

* The district court also dismissed the United States as a party. Ms. Rose does not appeal this dismissal.

## FACTS and PROCEDURAL HISTORY

Ms. Rose was an employee of the United States Postal Service of the Santa Rosa, California branch in October 1981. She was a mail carrier whose duties included lifting mail sacks. On October 29, 1981, complaining of back pains, Ms. Rose consulted a doctor who diagnosed her injury as a bursitis and sacroiliac strain. On November 3, 1981, she informed her supervisor, Richard Haub, of her injury and prepared a Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation, Form CA-1. At this time, Ms. Rose was not informed of her rights under the Federal Employees' Compensation Act or given a Form CA-4 which is necessary to allow disability compensation to become payable. The Postal Service Safety Office sent the Form CA-1 to the Office of Worker's Compensation Program (OWCP) between November 7 and 12, 1981. The OWCP received it on November 13, 1981.

Ms. Rose's Form CA-1 Notice was controverted by the Postal Service in a letter to OWCP dated November 20, 1981. There is no evidence that Ms. Rose was notified of this act.

From December 19 to 31, 1981, Ms. Rose was again absent from work. On December 23, 1981, Ms. Rose signed a Notice of Occupational Disease and Claim for Compensation, Form CA-2. On December 31, 1981, Ms. Rose resigned due to her back pains. Ms. Rose's supervisor signed the Form CA-2 on January 5, 1982 and mailed it to the OWCP the next day. Accompanying the Form was the Official Supervisor's Narrative requested by the OWCP. It was prepared by Douglas Bradford, the Safety Specialist. The OWCP received the Form on January 7, 1982.

On May 14, 1982, Bradford's office received two apparently conflicting decisions from the OWCP; the decisions found that Ms. Rose's October 29, 1981 injury was an occupational disease and her December 17 or 18, 1981 injury was traumatic. Bradford wrote the OWCP on May 28, 1982 requesting clarification. In August 1982, the OWCP sent Ms. Rose and the Post Office a letter correcting its May 14, 1982 decision and defined both her injuries as an occupational disease. Also, in August 1982, the OWCP sent Ms. Rose a Form CA-4 so that she could claim compensation. At no time prior to this date were such forms made available to Ms. Rose.

Ms. Rose signed the Form CA-4 on August 14, 1982 and gave it to Bradford's office on August 20, 1982. Bradford mailed the form to the OWCP who received it on August 23, 1982.

On May 13, 1983, the Department of Labor sent Ms. Rose a Form CA-8 so that she could claim additional benefits. OWCP received this form on June 13, 1983. At that time, OWCP asked that Ms. Rose provide additional medical information.

In October 1983, Ms. Rose began to receive medical compensation benefits. On or about June 4, 1984, the OWCP sent Ms. Rose a copy of her compensation file. However, the Department of Labor did not determine until June 1985 that Ms. Rose was entitled to full temporary total disability for the period of January 5, 1982 to June 8, 1985. The Department of Labor terminated compensation on April 7, 1988.

On February 15, 1986, Ms. Rose filed a complaint against the United States and the United States Postal Service stating a claim for negligence and alleging violations of the Federal Torts Claim Act and the Privacy Act. The Federal Torts Claims Act and negligence causes of action were dismissed as preempted by the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101, et seq.

After rejecting the appellees' claim that Ms. Rose's Privacy Act claim was barred by the statute of limitations, the district court held a two day trial. On August 4, 1988, the district court dismissed the United States as a party and granted summary judgment in favor of the United States Postal Service.

The district court found that there was no causal connection between the allegedly erroneously maintained records and an adverse determination by the OWCP. It also determined that there was no evidence that the Postal Service's conduct was willful or

intentional. Ms. Rose appeals the grant of summary judgment in favor of the Postal Service. This appeal timely follows.

## DISCUSSION

On appeal, the appellee again claims that Ms. Rose's cause of action is barred by the Privacy Act's two-year statute of limitation, 5 U.S.C. § 552a(g)(5). We discuss this issue first. Because we, like the district court, find that her claim is not barred by the statute of limitations, we will address the merits of Ms. Rose's Privacy Act claim.

### A. *The Statute of Limitations*

■ The Privacy Act provides a two year statute of limitation, 5 U.S.C. § 552a(g)(5), which commences when the person knows or has reason to know of the alleged violation. *See Englerius v. Veterans Administration*, 837 F.2d 895, 897 (9th Cir.1988); *Diliberti v. United States*, 817 F.2d 1259, 1262 (7th Cir.1987). Because the accrual of the statute of limitations in part turns on what a reasonable person should have known, we review this mixed question of law and fact for clear error. *Shultz v. Department of Army*, 886 F.2d 1157, 1159 (9th Cir.1989).

■ The district court determined that Ms. Rose first became aware of the alleged mishandling of her records on or about June 4, 1984, the date Ms. Rose received a copy of her compensation file. As a result, the district court found that Ms. Rose's February 21, 1986 filing was timely. Having reviewed the record, we are not left with the definite and firm conviction that the district court's holding was mistaken; hence, those findings will not be disturbed. Fed.R.Civ.P. 52(a).

### B. *The Merits*

The district court's grant of summary judgment on the merits is reviewed de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). In conducting this review, this court must determine whether, when viewing the evidence in a light most favorable to Ms. Rose, there are any genuine issues of mate-rial fact and whether the district court applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339-40.

■ The Privacy Act, 5 U.S.C. § 552a(g)(1)(C), is violated when the plaintiff shows 1) that the government failed to fulfill its record keeping obligation, 2) which failure proximately caused the adverse determination, 3) that the agency failed intentionally or willfully to maintain the records, and 4) that the plaintiff suffered actual damages. *Johnston v. Horne*, 875 F.2d 1415, 1422 (9th Cir.1989). The district court assumed, without deciding, that the Postal Service failed accurately to maintain or timely provide five specific forms necessary to Ms. Rose's claim for disability compensation. The parties do not contest this assumption.

Ms. Rose claims that the way in which the Postal Service maintained its records proximately caused the delay in processing her claim and ultimately caused her permanent disability. Furthermore, she claims that this delay was willful or intentional.

■ Whether or not the maintenance of the Postal Service's records delayed the processing of Ms. Rose's claim, we question whether such a delay is itself an adverse determination. *Cf. Hewitt v. Grabicki*, 794 F.2d 1373, 1379 (9th Cir.1986) (indicating that the final determination is dispositive of this prong of the test and not the steps involved in reaching this determination). However, we need not decide this issue for Ms. Rose has failed to show that the Postal Service's acts were willful or intentional.

To show intention or willfulness, Ms. Rose argues first that, after her initial injury, the Postal Service assigned her a more arduous task. Second, that in November and January the Postal Service failed to mail her CA-1 and CA-2 Forms, respectively, within the time allotted under FECA, 20 C.F.R. § 10.106(a). Third, she argues that the Postal Service failed to inform her of rights under FECA or to give her the CA-4 or the CA-8 Forms, as required by 20 C.F.R. §§ 10.106(b) and (c). Finally, she argues that the Postal Service

failed to give the OWCP the appropriate medical records as required.

The exact meaning of willful and intentional has not been defined by this court. However, we have determined that it is "conduct amounting to more than gross negligence...." *Johnston*, 875 F.2d at 1422; *see also Moskiewicz v. United States Department of Agriculture*, 791 F.2d 561, 563 (7th Cir.1986). Neither party disagrees with this standard.

Assuming that the response of the Postal Service might have been made sooner, Ms. Rose has presented no evidence to show that the agency acted in a willful or intentional manner. That she was not given a lighter task after her initial injury does not establish the Postal Service's intentional or willful misconduct with regard to its maintenance of her records. The Postal Service's failure to mail Ms. Rose's forms diligently, to notify of her rights, and to provide her the appropriate forms proves at best negligence. Finally, the record does not support Ms. Rose's claim that the Postal Service failed to provide the required medical information. For the above reasons, the district court judgment is AFFIRMED.

AFFIRMED.