76 F.3d 386
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Marjorie Jean HERRING, Plaintiff-Appellant,
v.
VETERANS ADMINISTRATION; Does, I through X, inclusive,
Defendants-Appellees.
Marjorie Jean HERRING, Plaintiff-Appellee,
v.
VETERANS ADMINISTRATION, Defendant-Appellant,
and
Does, I through X, inclusive, Defendants.
Marjorie Jean HERRING, Plaintiff-Appellee,
v.
VETERANS ADMINISTRATION, Defendant-Appellant,
and
Does, I through X, inclusive, Defendants.
Marjorie Jean HERRING, Plaintiff-Appellant,
v.
VETERANS ADMINISTRATION; Does, I through X, inclusive,
Defendants-Appellees.
 Nos. 94-55955, 94-55956, 95-55332 and 95-55333.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 17, 1995.
Decided Jan. 26, 1996.
 
 Before: HUG, ALARCON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 In 94-55955, Marjorie Herring, a veteran, appeals the district court's order granting summary judgment in favor of the Veterans Administration (VA) on Herring's claims for damages under the Privacy Act, 5 U.S.C. § 552a. The VA cross-appeals (95-55956) the district court's order requiring the VA to make certain record amendments and to grant Herring access to all her records. In 95-55332, the VA appeals the district court's order awarding attorney's fees to Herring. Herring cross-appeals (95-55333) the amount of her award.
 
 
 3
 We affirm the district court's order granting summary judgment in favor of the VA on Herring's claims for damages. The district court's order granting Herring limited relief on her access and amendment claims is reversed and remanded for entry of summary judgment in favor of the VA. The award of attorney's fees is vacated and remanded for entry of a modified award.
 
 FACTS AND PRIOR PROCEEDINGS
 
 4
 Marjorie Herring is a 70 year-old veteran. As a veteran, she is entitled to medical care free of charge from VA medical centers throughout the United States. In October 1983 Herring began experiencing back and neck pain. In 1984 she was treated for this pain at the VA Medical Center, San Diego (VASD), by the orthopedic and neuro-stroke clinics, and by a neurologist from the University of California, San Diego (UCSD). No diagnosis was given her condition; it was the opinion of some of the physicians who treated Herring that all or part of her pain was psychological in origin: "there is a possibility the patient is malingering or her [symptoms] are functional;" "I am concerned that this may be a conversion disorder."[1] Dystonia[2] was also identified as a possible cause of Herring's pain.
 
 
 5
 Between 1984 and 1987 Herring had numerous diagnostic tests and was seen by a variety of physicians at many clinics and departments at VASD, VA--West Los Angeles and VA--Milwaukee. After testing and examination, these physicians concluded that Herring's symptoms were primarily psychological in origin and hypothesized that she had a conversion disorder.
 
 
 6
 Herring also saw several non-VA physicians between 1985 and 1988 in an effort to get a diagnosis and treatment for her pain. None of the non-VA physicians were able to provide a conclusive diagnosis, particularly for the pain and muscle spasms Herring said she experienced at night. Two non-VA physicians expressed an opinion that Herring's pain was psychosomatic.
 
 
 7
 In June 1985, Herring reviewed her VA medical records for the first time. Beginning then and continuing throughout her treatment at VA medical centers, Herring objected to the psychological diagnosis and asked to have her records amended. Herring also asked that a diagnosis of Parkinson's disease be added. On August 31, 1987, after the Chief of Staff, VA--Milwaukee denied her request for amendment, Herring filed a Privacy Act appeal with the Veterans Affairs Administrator.
 
 
 8
 In October 1987 the VA convened a Board of Psychiatric Specialists to determine whether Herring's prior diagnosis of conversion disorder was justified. The board reviewed the reports of two physicians, one from the psychiatric and the other from the neuropsychiatry departments at the VA--Milwaukee. These reports contained the physicians' opinions that Herring suffered from a conversion disorder. The board also reviewed two discharge summaries, one from October 1986 and the other from April 1987, which had given Herring a diagnosis of conversion disorder. The board then ruled:
 
 
 9
 The board made it clear to the veteran that it did not feel qualified to diagnose her difficulties as Parkinson's disease or any other neurologic entity. The board explained that chronic pain seemed to be the predominant symptom, with the etiology yet to be fully established.... The board felt that while previous examiners were appropriate in considering conversion disorder in the differential, specific etiologic psychological factors or stressors were not identified necessary for such a conclusion. The board was unanimous in recommending that "Chronic Pain" be used by clinicians pending further elucidation.
 
 
 10
 In response to the Board's decision, the October 1986 and the April 1987 discharge summaries were amended to read "Impression: chronic pain, persistent, worse at night." The reports of the physicians were not changed.
 
 
 11
 On October 21, 1987, Herring was notified that the corrections to the discharge summaries had been made in accordance with the Board's decision. Herring was dissatisfied and wrote the Board that the recommended diagnosis of chronic pain was "totally harmful and erroneous." The VA suggested Herring specify which portions of her records she believed were inaccurate or incomplete. In response, Herring asked that her entire record be expunged. This request was denied on April 13, 1989:
 
 
 12
 the information contained in your records has been determined to accurately recite your medical history and treatment, and the impressions of your medical conditions. They also appear to be timely and complete. Further ... to expunge every item ... would be contrary to proper medical practice.
 
 
 13
 On April 22, 1991, Herring brought this action under the Privacy Act in the district court for the Southern District of California. On September 1, 1992, the district court filed a Fed.R.Civ.P. 16 scheduling order which provided:
 
 
 14
 Any motion to join other parties, to amend the pleadings, or to file additional pleadings shall be filed on or before October 23, 1992. (Emphasis added.)
 
 
 15
 Herring filed a motion to file a second amended and supplemental complaint on August 12, 1993, nine months after the deadline. The district court denied the motion to amend because Herring had failed to show good cause to modify the scheduling order as required by Rule 16 and "a review of the record indicates that discovery deadlines have been extended numerous times. Allowing Plaintiff to file a Second Amended and Supplemental Complaint at this stage of the litigation would seriously prejudice the Defendant and cause undue delay in the resolution of this case."
 
 
 16
 The VA moved for summary judgment against all of Herring's claims. On April 25, 1994, the district court granted summary judgment in favor of the VA on Herring's claims for damages. The court found that Herring "has not proffered sufficient evidence that the medical records that refer to her psychiatric condition were 'inaccurate,' she has not shown that the VA willfully or intentionally failed to maintain accurate records, nor has she provided competent evidence that the violations has [sic] caused her any damages." The district court denied summary judgment on Herring's claims for access to and amendment of the medical records. The district court ordered the VA to amend Herring's medical records "but only according to the guidelines provided in the October 13, 1987 [memo] ... in which the VA Board of Psychiatrists indicated that the diagnosis of "chronic pain" should replace "conversion disorder." The district court also ordered the VA to grant Herring "access to all her medical records." Judgment was entered on April 25, 1994. Herring filed a timely appeal of the district court's order on June 24, 1994. On appeal Herring argues that her motion to file a second amended complaint should have been granted, and that summary judgment should not have been granted against her damages claims. The VA filed a timely cross-appeal of the district court's order to amend and grant access.
 
 
 17
 Herring requested an award of attorney's fees in the amount of $48,826.50 as a "prevailing party" under the Privacy Act. $48,826.50 was the total amount of attorney's fees for all of Herring's claims. The VA opposed the motion and argued that Herring was not entitled to attorney's fees. The district court found that Herring's damages claims (on which she had not prevailed) were substantially more important than her other two claims. Therefore, the court weighted the damage claims at 70% and the other two claims at 30% and awarded Herring 30% of the total requested attorney's fees or $14,647.95. The VA timely appealed the award. Herring timely cross-appealed the amount of the award.
 
 STANDARD OF REVIEW
 
 18
 District court decisions regarding the preclusive effect of a Rule 16 scheduling order " 'will not be disturbed unless they evidence a clear abuse of discretion.' " Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607 (9th Cir.1992) (quoting Miller v. Safeco Title Ins. Co., 758 F.2d 364, 369 (9th Cir.1985)). The district court's grant of summary judgment on the merits is reviewed de novo. Rose v. United States, 905 F.2d 1257, 1259 (9th Cir.1990). Attorney's fees awards are generally reviewed for an abuse of discretion. Haworth v. Nevada, 56 F.3d 1048, 1051 (9th Cir.1995). The findings of fact made in support of an attorney's fees award are reviewed for clear error. Price v. Seydel, 961 F.2d 1470, 1475 (9th Cir.1994).
 
 DISCUSSION
 
 19
 1. Denial of Motion to File a Second Amended Complaint and Supplemental Complaint.
 
 
 20
 Herring argues that the district court abused its discretion when it denied her motion to file a second amended complaint because the district court had already modified the Rule 16 scheduling order a number of times. However, the district court took these modifications, such as the extension of discovery deadlines, into account when it concluded that Herring had failed to show good cause and denied Herring's motion. The district court did not abuse its discretion.
 
 
 21
 2. Privacy Act Claims.
 
 
 22
 Both Herring and the VA appeal the rulings of the district court on Herring's Privacy Act claims. Under the Privacy Act every federal agency is obligated to ensure that information compiled in individuals' records is accurate, relevant, timely, and complete. 5 U.S.C. § 552a(e)(5). The Act prohibits an agency from disclosing information about individuals to any person outside the agency without the prior written consent of the person to whom the information pertains, unless the disclosure comes within one of the twelve specific exemptions. § 552a(b). In addition, an individual is allowed access to records about herself, and to request that the agency amend any inaccuracies the individual claims to find. § 552a(d). The Privacy Act permits an individual to sue a federal agency in four instances:
 
 
 23
 (1) Failure to Maintain Quality of Records
 
 
 24
 Section 552a(g)(1)(C) of the Privacy Act allows an individual to sue an agency if it has failed to maintain the accuracy, relevance, timeliness, and completeness of a record, provided that the individual is injured by the agency's use of such an inaccurate, incomplete, or outdated document. If the plaintiff shows that the agency acted in a manner which was "intentional or willful," the plaintiff can recover money damages (in no case less than $1,000) as well as costs and attorney's fees. § 552a(g)(4).
 
 
 25
 (2) Other Violations of the Act
 
 
 26
 The Privacy Act permits a suit for any other violation of the Act which has an adverse effect on the individual. § 552a(g)(1)(D). The only civil remedy available for this type of claim is money damages. Cell Assocs., Inc. v. National Institutes of Health, 579 F.2d 1155, 1161-62 (9th Cir.1978).
 
 
 27
 (3) Refusal to Grant Access to Records
 
 
 28
 Section 552a(g)(1)(B) of the Privacy Act allows an individual to sue an agency for refusing to grant her request for access to her records. The only civil remedy available in such cases is an injunction ordering the agency to disclose the records. § 552a(g)(3)(A).
 
 
 29
 (4) Refusal to Correct or Amend Records
 
 
 30
 Section 552a(g)(1)(A) permits suit against an agency for failure to amend a record in accordance with an individual's request or for failure to review an individual's request for amendment. The district court may issue an injunction ordering the agency to amend the record. § 552a(g)(2)(B).
 
 
 31
 The district court read Herring's complaint to state claims under each of these sections. The district court granted summary judgment in favor of the Veterans Administration on Herring's claims for damages (1 and 2 above). The district court denied the Veterans Administration motion for summary judgment on Herrings other two claims (3 and 4 above). The district court ordered the VA to correct Herring's medical records and to grant her access to all her medical records. Herring appeals the grant of summary judgment on the damages claims and the VA cross-appeals the order to grant access and make certain amendments.
 
 
 32
 a. Claims for Damages.
 
 
 33
 The elements of Herring's first claim for damages are: (1) the VA's records are "inaccurate" within the meaning of the Privacy Act; (2) the VA willfully or intentionally failed to maintain accurate records; (3) the inaccurate records proximately caused an adverse determination; and (4) Herring suffered actual damages. Rose v. United States, 905 F.2d 1257, 1259 (9th Cir.1990).
 
 
 34
 The district court's grant of summary judgment in favor of the VA on this claim is affirmed. There is no evidence in the record that the VA acted intentionally or willfully, an essential element of Herring's claim.
 
 
 35
 The district court also granted summary judgment in favor of the VA on Herring's claim for damages for any other violation of the Act. To recover damages under this section of the Privacy Act, Herring must once again make a showing that the VA acted intentionally or willfully. 5 U.S.C. § 552a(g)(4); Henson v. NASA, 14 F.3d 1143, 1149 (6th Cir.1994), opinion corrected on rehearing by, 23 F.3d 990 (6th Cir.1994). Herring produced no evidence that the VA acted in such a manner. The district court's grant of summary judgment against Herring on this claim is also affirmed.
 
 
 36
 b. Order to Grant Access.
 
 
 37
 The VA argues that the district court should have granted summary judgment in its favor on Herring's access claim because Herring already had access to all her records. The district court found that the VA had failed to meet its burden of proof that Herring had access to all her records, because none of the declarations submitted by the VA state that Herring was provided with copies of her records.
 
 
 38
 Subsection (g)(4)(A) of the Privacy Act provides that a district court shall review an agency's action of denying access to records de novo and that "the burden is on the agency to sustain its action." 5 U.S.C. § 552a(g)(4)(A). In support of its motion for summary judgment, the VA submitted declarations which detailed its nationwide search for Herring's medical records. According to the declarations, the records were all provided to the VA's attorney for production to Herring. In the VA's brief in support of its motion for summary judgment, the VA's attorney states: "[a]ll of Plaintiff's Privacy Act records maintained by the VA have been produced to Plaintiff." The VA's attorney signed the brief pursuant to Fed.R.Civ.P. 11, thereby "certifying [to the court] that to the best of [her] knowledge, information and belief, formed after an inquiry reasonable under the circumstances, ... the ... factual contentions have evidentiary support...." Fed.R.Civ.P. 11(b)(3). Because the VA's attorney had personal knowledge of the production of Herring's records, this is sufficient to meet the VA's burden of proof that Herring had access to all her records. Herring submitted no evidence to the contrary. Thus, the district court erred in denying the VA's motion for summary judgment on Herring's access claim.
 
 
 39
 c. Order to Amend.
 
 
 40
 The VA argues that the district court erred when it denied its motion for summary judgment against Herring's amendment claim and ordered the "VA to correct Ms. Herring's medical records, but only according to the guidelines provided in the October 13, 1987 Administrative Record ... in which the VA Board of Psychiatrists indicated that the diagnosis of 'chronic pain' should replace 'conversion disorder.' " According to the VA, it had already amended Herring's record in accordance with the guidelines.
 
 
 41
 The only guideline in the October 13, 1987 Administrative Record (AR) is that the diagnosis of "chronic pain" should replace "conversion disorder." The AR reviewed two physician reports and two discharge summaries. The AR should be read to order amendment of the conclusions in the diagnostic summaries and not to order amendment of the opinions of the consulting physicians. This the VA had already done. Consequently, the district court erred in denying the VA's motion for summary judgment and ordering it to make the same amendments to Herring's records.
 
 
 42
 4. Eligibility for Attorney's Fees.
 
 
 43
 Both the amendment and access provisions of the Privacy Act allow the court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed." 5 U.S.C. 552a(g)(2)(B) and (g)(3)(B). The VA argues that Herring is not a prevailing party on her access and amendment claims. "In order to qualify as a prevailing party, a plaintiff must obtain some relief on the merits of his claim that materially alters the legal relationship between the parties." Friend v. Kolodzieczak, 65 F.3d 1514, 1517 (9th Cir.1995) (citing Texas State Teachers Ass'n v. Garlund Independent School Dist., 489 U.S. 782 (1989)). However, "no judicial relief or consent decree is required as long as a plaintiff's suit has 'prompted defendants to take action to satisfy [its] demands.' " Sablan v. Department of Fin. of Commonwealth of N. Mariana Islands, 856 F.2d 1317, 1324 (9th Cir.1988) (quoting Harris v. McCarthy, 790 F.2d 753, 759 (9th Cir.1986)). "Whether a litigant has shown a sufficient causal relationship between the lawsuit and the practical outcome realized is a pragmatic factual inquiry for the district court." Clark v. City of Los Angeles, 803 F.2d 987, 989-90 (9th Cir.1986).
 
 
 44
 Herring was a prevailing party with respect to her access claim. The record shows that the VA did not provide her access to all her records until she filed her lawsuit. Because the VA had amended the requisite records before Herring brought this action, she is not a prevailing party on her amendment claim.
 
 
 45
 5. Award of Thirty Percent of Requested Attorney's Fees.
 
 
 46
 Herring argues that the district court erred in granting Herring an attorney's fee award based on the number of claims on which she had prevailed. A court must determine a reasonable fee award in light of the degree of success obtained in the action. Farrar v. Hobby, 113 S.Ct. 566, 574-75 (1992). Here the district court was not merely mechanical in determining the award, it assessed the relative importance of each of Herring's claims, determined that the access and amendment claims, on which it believed Herring prevailed, were less important than the damages claims on which Herring did not prevail and awarded fees based on their relative importance. This finding was not clearly erroneous.
 
 
 47
 However, because Herring prevailed only on her access claim, the attorney's fees award is vacated and remanded for entry of a modified award.
 
 
 48
 6. Jury Trial of Privacy Act Claims.
 
 
 49
 Herring also asserted on appeal that she had a right to a jury trial of her Privacy Act claims. Because we hold that the district court should have granted the VA's motion for summary judgment against all of Herring's Privacy Act claims, this issue is moot on appeal.
 
 CONCLUSION
 
 50
 The district court's order granting summary judgment in favor of the VA on Herring's claims for damages is AFFIRMED. The district court's order denying the VA's motion for summary judgment and granting Herring limited relief on her access and amendment claims is REVERSED and REMANDED for entry of summary judgment in favor of the VA. The award of attorney's fees is VACATED and REMANDED for entry of a modified award.
 
 
 51
 The parties are to bear their own costs on appeal.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 "Conversion Disorder" is one form of a somatoform disorder--a psychiatric syndrome where the patient's symptoms suggest medical disease, but no demonstrable pathology accounts for the symptoms. Conversion disorder, in particular, is characterized by a loss of, or change in motor or sensory functioning resulting from psychological factors. The physical symptoms cannot be explained medically. Patients lack voluntary control of their symptoms. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) at 445
 
 
 [2]
 "Dystonia" is a rare chronic disease marked by involuntary, irregular contortions of the muscles of the trunk and extremities. Dorland's Illustrated Medical Dictionary (Leslie B. Arey, et al. eds., 23rd ed. 1957) at 421-22