116 F.3d 484
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MASONRY INDUSTRY TRUST ADMINISTRATION, INC.,
Plaintiff-Appellant-Cross-Appellee,
v.
WOODBURN MASONRY, INC., Defendant-Appellee-Cross-Appellant.
 Nos. 95-36286, 96-35138, 96-35305.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 7, 1997
Decided June 2, 1997.
 
 Appeal from the United States District Court for the District of Oregon, No. CV-94-00476-JMS; Janice M. Stewart, Magistrate Judge, Presiding.
 Before: BOOCHEVER, BRUNETTI and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Woodburn Masonry, Inc. ("Woodburn") paid contributions to several trust funds ("the Trusts") pursuant to a collective bargaining agreement ("CBA" or "agreement") with its employees' union. The Trusts discovered through an audit in 1989 that Woodburn had been erroneously calculating the hours worked on which it based its contributions and therefore was underpaying the Trusts. The Trusts sued and the district court awarded the Trusts back contributions, attorneys' fees and liquidated damages. The district court did not, however, award back contributions beyond the time it found the CBA had been terminated; nor did it award expert witness fees to the Trusts for the time their auditor appeared at and prepared for trial.
 
 
 3
 I. Termination of the Collective Bargaining Agreement
 
 
 4
 Woodburn argues, and the district court held, that it is not liable for trust fund contributions that would have accrued after May 31, 1989 because the CBA that mandated those contributions was no longer in effect.
 
 
 5
 Woodburn claims that the union's March 21, 1989 letter stating that it wished to "open discussion" on the CBA served as notice of its desire to modify, and that in accordance with the above language, the CBA did not automatically carry over beyond March 31, 1989.
 
 
 6
 The terms of the CBA envision the agreement carrying over to the next year unless one party indicates its wish to terminate or modify the agreement at least sixty days before the expiration date. The union's letter indicating that it wanted to "open discussions" can be read as stating its intention to modify the terms of the agreement. While this letter alone leaves a question as to what the union's intentions were with regard to the then-in-force agreement, Woodburn's subsequent letter clearly indicates that it understood the agreement to be terminated. The union never disputed Woodburn's reading that the CBA had been terminated, nor did it file an unfair labor practice charge. If the union had disputed Woodburn's understanding of the CBA as terminated, the agreement would have been only voidable and its termination could not be a defense to this trust action. In this case it is apparent that both parties viewed the CBA as terminated, which is a proper defense to a trust fund's claims for delinquent payments. See Laborers Health and Welfare Trust Fund v. Westlake Dev., 53 F.3d 979, 984 (9th Cir.1995) (where termination lawful, CBA is void); Carpenters Health and welfare Trust Fund v. Bla-Delco Const., Inc., 8 F.3d 1365, 1369 (9th Cir.1993) (where dispute over whether termination effective, CBA is voidable rather than void and termination not legitimate defense to a trust fund's action).
 
 II. Audit/Expert Witness Fees
 
 7
 The district court found that a portion of the fees that the Trusts paid to their auditor were expert witness fees rather than audit fees, and were therefore unrecoverable.
 
 
 8
 The trust agreement provides for "necessary legal action to collect withheld contributions ... reasonable audit fees ... incurred prior to trial, [and] at trial.... " The auditor here provided necessary service for trial testimony regarding Woodburn's accounting practices and its failure to make the required contributions to the Trusts. This service falls within the broad language of the trust agreements as a legitimate cost in recovering required contributions. On remand, the district court should calculate and award reasonable fees for the auditor's time in determining the amount of required contributions, preparing for and attending trial.
 
 III. General Release
 
 9
 As a result of a settlement in 1986 of a prior claim for delinquent contributions, by agreement dated October 9, 1986, the Trusts released Woodburn from
 
 
 10
 ... any and all obligations, claims and causes of action, including those asserted in Multnomah County Circuit Court Case No. 85-06-03915, for any contributions, interest, liquidated damages, attorney fees or auditor's fees which may have been due under the applicable collective bargaining agreement and trust agreements on behalf of employees that work for B & T Masonry for the period March 1983 through June of 1984.
 
 
 11
 The language of this release applies only to claims for unpaid contributions for the period of March 1983 through June 1984. Therefore, we affirm.
 
 IV. Statute of Limitations
 
 12
 Woodburn claims alternatively that the Trusts' claim for contributions prior to May 3, 1988 is barred by the six-year statute of limitations. Under federal law, the statute began running when the Trusts knew or should have known about the unpaid contributions. Northern Cal. Retail Clerks Unions v. Jumbo Markets, Inc., 906 F.2d 1371, 1372 (9th Cir.1990) (as amended).
 
 
 13
 When the question of when the statute of limitations began to run turns on what a reasonable person should have known, a mixed question of law and fact is presented that is reviewed for clear error. Rose v. United States, 905 F.2d 1257, 1259 (9th Cir.1990).
 
 
 14
 There is no question but that the Trusts did not know of these unpaid contributions until they requested an audit in 1989. Woodburn argues essentially that the Trusts should have known of them earlier because the "trust agreement required Woodburn to make appropriate contributions, thus the Trust knew that unpaid contributions was a potential claim." Moreover, Woodburn contends that it did not have a fiduciary relationship with the Trusts and "was not required to report any underpayment to the trust," and that therefore the Trusts should have been monitoring the contributions more closely.
 
 
 15
 Woodburn presented no facts to show that the Trusts should have known of the delinquent contributions earlier. Furthermore, Woodburn is wrong as a matter of law.
 
 
 16
 The employers in ascertaining and reporting the hours worked put themselves in ... a fiduciary relation.... The notion that the employers were free to cheat their employees or bury their [false] reporting is repugnant to the mutual character of the enterprise.... That the trustees of the Trust Funds have their own duties to verify the basis of employer contributions does not diminish the responsibilities of the employers. It is common to audit fiduciaries; they remain fiduciaries.
 
 
 17
 Jumbo Markets, 906 F.2d at 1373. It is no argument to say that the Trusts should have expected Woodburn to lie and cheat. We affirm the district court's finding that the statute of limitations did not begin to run until 1989.
 
 CONCLUSION
 
 18
 We affirm the district court's findings regarding the termination of the CBA, the general release, and the statute of limitations; we reverse the district court's finding that it could not award full witness fees to the Trusts' auditor and remand for the district court to determine those fees.
 
 
 19
 The trusts are awarded costs and reasonable attorney's fees on appeal.
 
 
 20
 AFFIRMED in part; REVERSED in part; and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3