*1033 Opinion by Judge BERZON; Concurrence by Chief Judge KOZINSKI; Dissent by Judge TASHIMA; Dissent by Judge BEA.
OPINION
BERZON, Circuit Judge:
We agreed to hear this case en banc to clarify whether the statute of limitations in 28 U.S.C. § 2401(b) of the Federal Tort Claims Act (“FTCA”) may be equitably tolled. We hold that § 2401(b) is not “jurisdictional,” and that equitable tolling is available under the circumstances presented in this case.
I. BACKGROUND
A. Statutory Background
The FTCA contains three timing rules that govern when a plaintiff may file a claim against the United States in the district court: First, 28 U.S.C. § 2675(a) establishes an administrative exhaustion requirement, which states that “[a]n action shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency.” Section 2675 further provides that “[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim.” Id.
Second, one statute of limitations in § 2401(b) sets a two-year deadline within which a claimant must present his claim “to the appropriate Federal agency ... after such claim accrues.” Id. § 2401(b); see United States v. Kubrick, 444 U.S. 111, 119-21, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).
Finally, § 2401(b) also establishes a second limitations period — that “[a] tort claim against the United States shall be forever barred ... unless action is begun within six months after the ... final denial of the claim by the agency to which it was presented.” 28 U.S.C. § 2401(b).
With this statutory framework in mind, we turn to the procedural history of this case, the material facts of which are not in dispute.
B. Facts
More than a decade ago, Kwai Fun Wong (“Wong”) and Wu Wei Tien Tao Association (“the Association”), a religious organization, sued the United States and several Immigration and Naturalization Service (“INS”) officials for claims arising out of Wong’s detention. See Wong v. INS (Wong I), 373 F.3d 952 (9th Cir.2004); Wong v. Beebe (Wong II), 381 Fed.Appx. 715 (9th Cir.2010) (per curiam). The only remaining claim is one under the FTCA, alleging negligence against the United States based on the conditions of her confinement.
Wong and the Association filed their original complaint in the district court on May 18, 2001. That same day, Wong filed her negligence claim with the INS pursuant to the FTCA’s administrative exhaustion requirement, 28 U.S.C. § 2675(a). Under § 2675(a), Wong was required to wait six months — until November 19, 2001 — or until the INS denied the claim, before filing her negligence claim in the district court. See 28 U.S.C. §§ 1346(b)(1), 2675(a).
On November 14, 2001, Wong filed a motion in the district court seeking leave to file a Second Amended Complaint adding the negligence claim “on or after November 20, 2001” — ie., after the six-month waiting period required under § 2675(a) had expired. The INS issued a written decision denying Wong’s administrative claim on December 3, 2001.
*1034 At that point, Wong had until June 3, 2002, to file her negligence claim in the district court. Here is why: Pursuant to § 2675(a), Wong was prohibited from filing her claim in the district court until after she presented it to the INS and the INS “finally decided [the claim] ... in writing and sent [it] by certified or registered mail.” 28 U.S.C. § 2675(a). Alternatively, § 2675(a) gave Wong the option to treat the INS’s “failure ... to make final disposition of [her] claim within six months after it [was] filed” as the “final denial of the claim.” Id. Wong attempted to exercise that option when she filed her motion in the district court seeking leave to file her amended complaint “on or after November 20, 2001” — six months after she filed her claim with the INS. Had her motion been granted, then, pursuant to § 2401(b), Wong would have had six months — until May 20, 2002 — to file her amended complaint with the added FTCA claim in the district court. See id. § 2401(b). As noted, however, the INS denied Wong’s claim on December 3, 2001, thereby starting anew the clock on the six-months limitations period in § 2401(b). Thus, the relevant deadline for filing Wong’s claim in the district court was June 3, 2002. See Lehman v. United States, 154 F.3d 1010, 1015 (9th Cir.1998).
On April 5, 2002, more than five months after Wong filed her motion seeking leave to amend, the magistrate judge issued Findings and Recommendations (“F & R”) recommending that Wong be permitted to file an amended complaint adding her FTCA claim. The district court did not issue an order adopting the F & R until June 25, 2002, three weeks after the six-month filing deadline had expired.
Wong did file an amended complaint on August 13, 2002, which included the FTCA claim. The district court, relying on Marley v. United States, 567 F.3d 1030, 1038 (9th Cir.2009), held that § 2401(b) was “jurisdictional,” and that equitable tolling was therefore not available to excuse Wong’s untimely filing of her claim. The district court dismissed Wong’s FTCA claim for lack of jurisdiction. This appeal followed.
II. DISCUSSION
A. Applicability of Equitable Tolling to FTCA Claims
1. General Background
Irwin v. Department of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), sets forth the “general rule ... governing] the applicability of equitable tolling in suits against the Government.” Id. at 95, 111 S.Ct. 453. That case considered whether the “rule of equitable tolling” applied to an untimely Title VII claim brought against the government. Id. at 94-95, 111 S.Ct. 453. Noting that “[t]ime requirements in lawsuits between private litigants are customarily subject to equitable tolling,” Irwin held that “the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.” Id. at 95-96, 111 S.Ct. 453 (internal quotation marks omitted).
Irwin’s “general rule” is not without exception. Some statutes of limitation are “more absolute,” and do not permit “court[s] to consider whether certain equitable considerations warrant extending a limitations period.” John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-34, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). “As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as ‘jurisdictional.’ ” Id. at 134, 128 S.Ct. 750 (citing Bowles v. Russell, 551 U.S. 205, 210, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007)).
The “jurisdiction” terminology used in the government-defendant equitable *1035 tolling context can, however, be misleading. In a series of recent cases, the Supreme Court has “pressed a stricter distinction between truly jurisdictional rules, which govern ‘a court’s adjudicatory authority,’ and nonjurisdictional ‘claim-processing rules,’ which do not.” Gonzalez v. Thaler, — U.S. -, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012) (quoting Kontrick v. Ryan, 540 U.S. 443, 454-55, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (emphasis added)). This distinction is critical for present purposes, because, while courts “[have] no authority to create equitable exceptions to jurisdictional requirements,” Bowles, 551 U.S. at 214, 127 S.Ct. 2360, nonjurisdictional claim-processing requirements remain “subject to [Irwin’s ] rebuttable presumption in favor of equitable tolling.” Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010) (internal quotation marks omitted).
Applying these principles to the particular statute of limitations here, our case law has come to contradictory results. Alvarez-Machain v. United States (Alvarez-Machain I), 107 F.3d 696, 701 (9th Cir.1996), held that “[e]quitable tolling is available for FTCA claims in the appropriate circumstances.” Twelve years later, Marley held precisely the opposite, stating “that the statute of limitations in 28 U.S.C. § 2401(b) is jurisdictional and, consequently, equitable doctrines that otherwise could excuse a claimant’s untimely filing do not apply.”[1] 567 F.3d at 1032; see also Adams v. United States, 658 F.3d 928, 933 (9th Cir.2011) (applying Marley).
We agreed to hear this case to resolve the conflict between Alvarez-Machain I and Marley. See Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1478-79 (9th Cir.1987) (en banc). Doing so, we join with several other circuits in concluding that § 2401(b) is subject to equitable tolling. See Arteaga v. United States, 711 F.3d 828, 832-33 (7th Cir.2013); Santos ex rel. Beato v. United States, 559 F.3d 189, 194-98 (3d Cir.2009); Perez v. United States, 167 F.3d 913, 916-17 (5th Cir.1999).
2. Jurisdictional vs. Nonjurisdictional Claim-Processing Rules
As a threshold matter, we must decide whether § 2401(b) is a “jurisdictional” rule, to which equitable doctrines cannot apply, or a nonjurisdictional “claim-processing rule” subject to Irwin’s presumption in favor of equitable tolling. Both Alvarez-Machain I and Marley were decided without the benefit of the Supreme Court’s most recent decisions clarifying the difference between these two categories. Accordingly, before turning to § 2401(b) itself, we discuss the Court’s efforts in recent years to “bring some discipline” to the “jurisdictional” label. See Henderson ex rel. Henderson v. Shinseki, - U.S. -, 131 S.Ct. 1197, 1202-03, 179 L.Ed.2d 159 (2011); see also Gonzalez, 132 S.Ct. at 648.
The consequences of labeling a particular statutory requirement “jurisdictional” are “drastic.” Gonzalez, 132 S.Ct. at 648. A court’s “[s]ubject-matter jurisdiction can never be waived or forfeited,” *1036 “objections [to the court’s jurisdiction] may be resurrected at any point in the litigation,” and courts are obligated to consider sua sponte requirements that “go[ ] to subject-matter jurisdiction.” Id.; see also Henderson, 131 S.Ct. at 1202; Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1219 (9th Cir.2009).
The Court has clarified in recent years that the term “ ‘[j]urisdiction[al]’ refers to a court’s adjudicatory authority ... [and] properly applies only to prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) implicating that authority.” Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 160-61, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) (emphasis added) (internal quotation marks and citation omitted). Under this narrow interpretation, the term “jurisdictional” “refers [only] to a tribunal’s power to hear a case.” Union Pac. R.R. Co. v. Bhd. of Locomotive Eng’rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 81, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009) (internal quotation marks omitted). So-called “claim-processing rules,” by contrast, “are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.” Henderson, 131 S.Ct. at 1203.
“To ward off profligate use of the term ‘jurisdiction,’ [the Court has] adopted a ‘readily administrable bright line’ for determining whether to classify a statutory limitation as jurisdictional.” Sebelius v. Auburn Reg’l Med. Ctr., — U.S. -, 133 S.Ct. 817, 824, 184 L.Ed.2d 627 (2013) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)). Specifically, courts must now ask “whether Congress has ‘clearly state[d]’ that the rule is jurisdictional; absent such a clear statement ... ‘courts should treat the restriction as nonjurisdietional in character.’ ” Id. (quoting Arbaugh, 546 U.S. at 515-16, 126 S.Ct. 1235). Congress need not “incant magic words in order to speak clearly.” Id. Rather, courts are to review a statute’s language, “context, and relevant historical treatment” to determine whether Congress clearly intended a statutory restriction to be jurisdictional. Reed Elsevier, Inc., 559 U.S. at 166, 130 S.Ct. 1237.
Applying this bright-line rule in a spate of recent cases, the Court has held nonjurisdictional various statutory limitations on the substantive coverage of statutes or the procedures for enforcing them. See, e.g., Union Pac. R.R., 558 U.S. at 81-82, 130 S.Ct. 584 (holding not jurisdictional a Railway Labor Act procedural rule requiring proof of a prearbitration settlement conference); Reed Elsevier, 559 U.S. at 164-66, 130 S.Ct. 1237 (holding not jurisdictional the Copyright Act registration requirement); Gonzalez, 132 S.Ct. at 648-52 (holding not jurisdictional certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”) requiring issuance of a certificate of appealability indicating which specific issues sufficiently implicate the denial of a constitutional right); but see Bowles, 551 U.S. at 209-10, 127 S.Ct. 2360 (holding jurisdictional a time limit for filing a notice of appeal in a civil case under 28 U.S.C. § 2107(c)).
As the issue here pertains to a statute of limitations, the Court’s recent decisions applying the “clear statement” rule to statutory time limits are particularly instructive. Henderson held that “a veteran’s failure to file a notice of appeal within the 120-day period” required under 38 U.S.C. § 7266(a) “should [not] be regarded as having ‘jurisdictional’ consequences.” 131 S.Ct. at 1200. Canvassing the Court’s recent case law discussing jurisdictional versus nonjurisdietional rules, Henderson explained that “[fjiling deadlines ... are *1037 quintessential claim-processing rules.” Id. at 1203 (emphasis added). “[E]ven if important and mandatory,” such rules, “should not be given the jurisdictional brand.” Id.
Turning to the text of § 7266, Henderson emphasized that the relevant provision “ ‘does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [Veterans Court].’ ” Id. at 1204 (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (alteration in original)). Although “ § 7266 is cast in mandatory language” — providing that a claimant “shall file a notice of appeal ... within 120 days” — Henderson “rejected the notion that ‘all mandatory prescriptions, however emphatic, are ... properly typed jurisdictional.’ ” Id. at 1204-05 (quoting Union Pac. R.R., 558 U.S. at 81, 130 S.Ct. 584) (emphasis added). Indeed, as Henderson noted, Congress placed § 7266 “in a sub-chapter entitled ‘Procedure,’” and not in the “Organization and Jurisdiction” sub-chapter of the statute, which “suggests Congress regarded the 120-day limit as a claim-processing rule.” Id. Henderson therefore found no clear statement indicating that § 7266 was “jurisdictional.” Id.; see also Holland, 130 S.Ct. at 2560 (holding not jurisdictional AEDPA’s statute of limitations in 28 U.S.C. § 2244(d)).
More recently, Auburn Regional Medical Center considered whether the Medicare Act’s 180-day statutory deadline for filing an administrative appeal challenging Medicare reimbursements is jurisdictional. 133 S.Ct. at 821. The Court held that it is not. “Key to our decision,” the Court explained, is that “filing deadlines ordinarily are not jurisdictional; indeed, we have described them as ‘quintessential claim-processing rules.’ ” Id. at 825 (quoting Henderson, 131 S.Ct. at 1203).
Auburn Regional Medical Center went on to reject the notion that the 180-day limit was “jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions.” Id. at 825. Nor was it significant in Auburn Regional Medical Center that Congress “expressly made ... other time limits in the Medicare Act” nonjurisdictional. Id. (emphasis added). Structural considerations such as these did not provide a “clear statement” that Congress intended the 180-day limit to be jurisdictional. The limitations provision was therefore “most sensibly characterized as a nonjurisdictional prescription.” Id. at 826.
Finally, we applied a similar analysis in a recent en banc case addressing whether the exhaustion-of-remedies requirement of the Individuals with Disabilities Education Act (“IDEA”), 20 U.S.C. § 1415(i), is jurisdictional. See Payne v. Peninsula Sch. Dist., 653 F.3d 863 (2011) (en banc). Based on the Supreme Court’s recent line of cases “clarifying the difference between provisions limiting our subject matter jurisdiction, which cannot be waived ..., and ‘claims processing provisions,’ ” we concluded that §. 1415(i) is not jurisdictional for three reasons. Id. at 867-69 (citing cases).
First, “we observe[d] that nothing in § 1415 mentions the jurisdiction of the federal courts.” Id. at 869. “Second, nothing in the relevant jurisdictional statutes requires exhaustion under the IDEA.” Id. at 870. “Without clearer instruction from Congress,” we declined to “infer” a jurisdictional exhaustion-of-remedies requirement. Id. “Finally, we [could] find no reason why § 1415(Z) should be read to make exhaustion a prerequisite to the exercise of federal subject matter jurisdiction.” Id. To the contrary, we suggested that there were “many good reasons why” § 1415(i) should not qualify as jurisdictional. Most notably, determining whether a plaintiff had exhausted her rem *1038 edies is an “inexact science,” subject to various “fact-specific” questions such as whether exhaustion would be futile. Id. Thus, we summarized, § 1415(i) is not jurisdictional, as it “is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions.” Id. at 870-71 (quoting Reed Elsevier, 559 U.S. at 166, 130 S.Ct. 1237); see also Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 979 (9th Cir.2012) (holding that an employee’s status as a plan “participant” is an element of his ERISA claim, not a jurisdictional limitation).
3. § 2401(b) Is Not Jurisdictional
Marley stated that “[Resolution of the present case ... [first] depends on how to categorize the six-month filing deadline of § 2401(b)” — as a “jurisdictional” requirement or as a nonjurisdictional “claim-processing rule.” 567 F.3d at 1035. That is true, but only in the asymmetrical sense that if the deadline is jurisdictional, it cannot be tolled; as will appear, even if it is not jurisdictional, tolling may still be precluded by a sufficiently clear congressional expression of that restriction. We hold that § 2401(b) falls squarely in the claim-processing category, and so overrule Marley’s contrary conclusion.
Several factors underlie our conclusion that § 2401(b) is nonjurisdictional.
a. Language
First, by its terms, § 2401(b) provides only that “[a] tort claim against the United States shall be forever barred unless ... action is begun within six months” of mailing of notice of the final agency denial. 28 U.S.C. § 2401(b). That statement “does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [federal courts].” Henderson, 131 S.Ct. at 1204; see also Payne, 653 F.3d at 869-70. Rather, § 2401(b) merely states what is ordinarily true of statutory filing deadlines: once the limitations period ends, whether extended by the application of tolling principles or not, a plaintiff is “forever barred” from presenting his claim to the relevant adjudicatory body. See Kubrick, 444 U.S. at 117, 100 S.Ct. 352.
Notably, although the exact language differs, § 2401(b) is the same in its lack of a reference to jurisdiction as the general, non-tort statute of limitations contained in § 2401(a), which establishes a six-year filing deadline for “every civil action commenced against the United States.” 28 U.S.C. § 2401(a). And Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765, 770 (9th Cir.1997), held subsection (a) non-jurisdictional, emphasizing that it “does not speak of jurisdiction, but erects only a procedural bar.”[2]
Contrary to the government’s assertion, § 2401(b) does not contain such unusually emphatic language that we may infer congressional intent to limit the adjudicatory authority of the federal courts from that language. We have held on prior occasions that statutes of limitations containing the phrase “forever barred” are subject to equitable tolling. For example, the 1955 Clayton Act Amendments provided that any action to enforce a right under §§ 15, 15a, and 15c of the Act “shall be forever barred unless commenced within four years after the cause of action accrued.” 15 U.S.C. § 15b (emphasis added); see also Pub.L. No. 137, 69 Stat. 283 (1955). Mt. *1039 Hood Stages, Inc. v. Greyhound Corp., 616 F.2d 394, 396-407 (9th Cir.1980), determined that § 15b could be equitably tolled. See also Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060-61 (9th Cir.2012) (discussing tolling under § 15b); cf. Rotella v. Wood, 528 U.S. 549, 561, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (indicating that equitable tolling may be available for civil claims brought under the Racketeer Influenced and Corrupt Organizations Act (“RICO”), which applies the same four-year statute of limitations in 15 U.S.C. § 15b).
Likewise, the 1947 amendments to the Fair Labor Standards Act (“FLSA”)— which were enacted on the heels of the FTCA — provided that every action under the FLSA “shall be forever barred unless commenced within two years after the cause of action accrued” 29 U.S.C. § 255(a) (emphasis added); see also Pub.L. No. 40, § 6(b), 61 Stat. 84, 88 (1947). Partlow v. Jewish Orphans’ Home of Southern California, 645 F.2d 757, 760-61 (9th Cir.1981), abrogated on other grounds by Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), held that this statute of limitations could be equitably tolled.
In various other statutes enacted in the mid-twentieth century, Congress included limitations provisions “forever barr[ing]” untimely claims. See, e.g., Automobile Dealer Franchise Act of 1956, 84 Pub.L. No. 1026, § 3, 70 Stat. 1125 (1956), codified at 15 U.S.C. § 1223 (“Any action brought pursuant to this Act shall be forever barred unless commenced within three years after the cause of action shall have accrued.”) (emphasis added); National Traffic and Motor Vehicle Safety Act of 1966, Pub.L. No. 89-563, § 111(b), 80 Stat. 718, 725 (1966), as amended by Pub.L. No. 103-272, 108 Stat. 745 (1994) (“Any action brought pursuant to this section shall be forever barred unless commenced within three years after the cause of action shall have accrued”) (emphasis added); Agricultural Fair Practices Act of 1967, Pub.L. No. 90-288, § 6(a), 82 Stat. 93, 95 (1967), codified at 7 U.S.C. § 2305(c) (same); National Mobile Home Construction and Safety Standards Act of 1974, Pub.L. No. 93-383, § 613, 88 Stat. 633, 707 (1974), codified at 42 U.S.C. § 5412(b) (same). Viewed against this backdrop, § 2401(b)’s “forever barred” language appears to be more a vestige of mid-twentieth-century congressional drafting conventions than a “clear statement” of Congress’s intent to include a jurisdictional filing deadline in the FTCA.
Moreover, even if one does read the “forever barred” language in § 2401(b) as an especially emphatic limitation on FTCA claims, the Supreme Court’s recent line of cases clarifying the jurisdictional/nonjurisdictional distinction make plain that not all “ ‘mandatory prescriptions, however emphatic, are ... properly typed jurisdictional.’ ” Henderson, 131 S.Ct. at 1205 (quoting Union Pac. R.R., 558 U.S. at 81, 130 S.Ct. 584) (emphasis added); see also Gonzalez, 132 S.Ct. at 651; Kontrick, 540 U.S. at 454, 124 S.Ct. 906. And nothing in the text of § 2401(b) suggests that it is anything other than a straightforward filing deadline — a “quintessential claim-processing rule[ ].” Henderson, 131 S.Ct. at 1203.
Undeterred by the statute’s silence as to whether the limitations period is jurisdictional (and by its placement in a section not directed at jurisdiction), Judge Bea offers a grand theory as to why § 2401(b) nonetheless clearly states a jurisdictional rule, positing that there are two types of statutes of limitations: “Plain Statutes of Limitations” and “Consequence Statutes of Limitations.” Bea Dissent at 1063, 1065. The latter purportedly “provide mandatory consequences for failures to act according to their prescriptions,” id. at 1066, and so *1040 “require the courts to respond in a certain way to a party’s failure to timely act.” Id. Judge Bea’s dissent goes on to maintain that whenever a limitations provision states that a claim “shall be ... barred,” or “forever barred,” “Congress has spoken in jurisdictional terms” and the courts lack authority to adjudicate the claim — even if there is no mention of jurisdiction or placement in a jurisdiction provision. Id. at 1066-67.
Judge Bea’s consequential language approach is not one that the Supreme Court has ever articulated or relied upon in determining whether a particular limitations provision is jurisdictional. Indeed, the Court criticized this approach in Irwin, noting that, “[a]n argument can undoubtedly be made that the ... language is more stringent ..., but we are not persuaded that the difference ... is enough to manifest a different congressional intent with respect to the availability of equitable tolling.” 498 U.S. at 95, 111 S.Ct. 453. While the Court has held jurisdictional certain limitations provisions containing the phrase “shall be ... barred,” it has never relied on the notion of “consequential” language to do so.[3] Instead, the Court has repeatedly eschewed a “magic words” approach to determining whether procedural requirements are jurisdictional, repeatedly taking a multifactor approach to the inquiry. See Reed Elsevier, 559 U.S. at 165, 130 S.Ct. 1237; Auburn Reg’l Med. Ctr., 133 S.Ct. at 824.
Beyond that observation, we shall bypass ruling on whether Judge Bea’s “consequential” language theory is a helpful construct in some circumstances. As with most attempts to create rigid dichotomous categories, the trick is not in devising the categories but in placing various circumstances into one or the other category. Although, according to Judge Bea, a limitations provision containing “shall ... be barred” language “ ‘set[s] forth an inflexible rule requiring dismissal,’ ” Bea Dissent at 1068 (quoting Holland, 130 S.Ct. at 2560), the words relied upon simply do not have that import.
First, as to the word “shall,” the Court consistently has rejected arguments “seiz[ing] on the word ‘shall’ ” to suggest that “ ‘all mandatory prescriptions, however emphatic, are ... properly typed jurisdictional.’ ” Gonzalez, 132 S.Ct. at 651 (quoting Henderson, 131 S.Ct. at 1205); see also Dolan v. United States, 560 U.S. 605, 130 S.Ct. 2533, 2539, 177 L.Ed.2d 108 (2010) (holding that a statute’s use of the word “shall” alone does not render statutory deadline jurisdictional).
Second, § 2401(b) does not in terms order courts to do anything, including dismiss any untimely claim. Like the exhaustion-of-remedies requirement at issue in Payne, “neither the word ‘courts’ nor the word ‘jurisdiction’ appears in [§ 2401(b) ].” Payne, 653 F.3d at 869. Instead, the phrase “shall be ... barred” is couched in the passive tense, and so could as well be directed to the plaintiff, barring him from filing the suit, as to the court, directing it to bar the filing. The “shall be ... barred” language of the six-month filing deadline therefore does not express “an inflexible rule requiring dismissal whenev *1041 er its clock has run.” Holland, 130 S.Ct. at 2560 (internal quotation marks omitted).
Third, the word “forever” in § 2401(b) cannot supply the missing link with regard to declaration of an inflexible rule. See Bea Dissent at 1068-69. The word “forever” is most commonly understood as one focusing on time, not on scope or degree of flexibility in a static time frame. See Webster’s New International Dictionary of the English Language 990 (2d ed.1940) (defining “forever” to mean “[f]or a limitless time or endless ages; everlastingly; eternally,” and “[a]t all times; always; incessantly”); Oxford English Dictionary (2013) (defining “forever” to mean “[ajlways, at all times; in all cases ... [t]hroughout all time, eternally; throughout all past or all future time; perpetually”). As such, the term “forever” is most naturally read to emphasize that an untimely FTCA claim, once barred, is precluded permanently, not temporarily or until some later event occurs. A claimant therefore cannot refile the claim, nor may the time bar be lifted once it is imposed. So understood, the term “forever” does have a function in the statute, just not the one Judge Bea posits.[4] Thus, as the Fifth Circuit observed, “the use of the words ‘forever barred’ [in § 2401(b) ] is irrelevant to equitable tolling, which properly conceived does not resuscitate stale claims, but rather prevents them from becoming stale in the first place.”[5] Perez, 167 F.3d at 916.
In sum, nothing in the language of § 2401(b) — including the term “shall ... be barred,” and the word “forever” — supplies a “clear statement” that Congress intended the six-month filing deadline to be jurisdictional.[6]
*1042 b. Placement
The “context” surrounding § 2401(b) likewise does not “clearly” indicate Congress’s intent to “rank” this provision as jurisdictional. Auburn Reg’l Med. Ctr., 133 S.Ct. at 824.
The jurisdiction-granting provision of the FTCA is located at 28 U.S.C. § 1346(b)(1) and provides that “[sjubject to the provisions of chapter 171 of this title, the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States ... under circumstances where the United States, if a private person, would be liable to the claimant.” Section 1346(b)(1) makes no mention of the six-month filing deadline in § 2401(b). Furthermore, while § 1346(b)(1) does cross-reference “the provisions of chapter 171,” it does not cross-reference § 2401(b), which is located in chapter 161, not chapter 171. Thus, the FTCA’s statute of limitations “is located in a provision separate from [the provision] granting federal courts subject-matter jurisdiction over [FTCA] claims.” Reed Elsevier, 559 U.S. at 164, 130 S.Ct. 1237 (internal quotation marks omitted); see also Henderson, 131 S.Ct. at 1205.
Further, even if § 1326(b) did mention the six-month filing deadline in § 2401(b), the Court’s recent guidance on this subject indicates that an otherwise nonjurisdictional rule’s location within a statutory scheme does not automatically transform the rule into a jurisdictional prerequisite. Thus, a rule “does not become jurisdictional simply because it is placed in a section of. a statute that also contains jurisdictional provisions.” Auburn Reg’l Med. Ctr., 133 S.Ct. at 825; see also Gonzalez, 132 S.Ct. at 651.
Not satisfied with the plain language of § 1346(b), the government looks elsewhere for a “clear statement” of § 2401(b)’s jurisdictional import: the legislative history of the FTCA. According to the government, “[t]he FTCA’s limitations provision is found outside of chapter 171 only as a happenstance of recodifieation.” In his dissent, Judge Tashima likewise relies on the earlier version of the FTCA to conclude that “Congress provided a clear statement [that the FTCA’s limitations provision was jurisdictional] when enacting the provision in 1946,” and that statement remains clear today. Tashima Dissent at 1059.
In the first place, and dispositively, it is improper to consider legislative history in this instance. “[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material.” Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). Consequently, “when the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.” Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)) (internal quotation marks omitted). The current statutory language of § 1326(b), the FTCA jurisdictional provision, cross-references other provisions of the FTCA but not the chapter containing the limitations provi *1043 sion, § 2401(b). There is no ambiguity whatever in this regard; chapter 171 is not, and does not include, chapter 161, period.[7]
Secondly, even if we were to consider the FTCA’s legislative history, we could find no “clear statement” as to jurisdiction. See Exxon Mobil, 545 U.S. at 568-69, 125 S.Ct. 2611. Congress first enacted the FTCA in 1946 as Title IV of the Legislative Reorganization Act (“1946 Act”). See Pub.L. No. 79-601, tit. IV, 60 Stat. 812, 842-47 (1946). The provisions of the FTCA were codified in chapter 20 of Title 28 of the United States Code. See 28 U.S.C. §§ 921-46 (1946).[8] As originally codified, the FTCA’s grant of jurisdiction read:
Subject to the provisions of this chapter, the United States district court for the district court wherein the plaintiff is resident or wherein the act or omission complained of occurred ... shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only ... on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred.
28 U.S.C. § 931(a) (1946). Congress recodified and reorganized all of Title 28 in 1948, and, in the course of doing so, placed the FTCA’s limitations provision in its current location in chapter 161, while placing most of the other FTCA provisions formerly located in chapter 20 in chapter 171. Pub.L. No. 80-773 (“1948 Act”), 62 Stat. 869, 970-74 (1948); id. 62 Stat. 869, 982-85. The jurisdiction-granting provision was relocated to chapter 85 and codified at 28 U.S.C. § 1346(b). Id. at 933. Because § 1346(b) was no longer located in the same chapter as the other FTCA provisions, the “subject to” phrase was changed to refer to “the provisions of chapter 173 of this title.” Id.
As Judge Tashima points out, the reference in the 1948 version of § 1346(b) to chapter 173 was a scrivener’s error, as there was no chapter 173 of Title 28. Ta *1044 shima Dissent at 1056. A year later, Congress corrected the error, changing the language of § 1346(b) to read: “[sjubject to the provisions of chapter 171.” See Pub.L. No. 81-55, 63 Stat. 62 (1949). But that correction did nothing to erase the fact that the only cross-reference in the jurisdictional provision, § 1346(b), is to a chapter, chapter 171, which does not contain the FTCA limitations provisions.
Nor does the directive of the 1948 Act that we are not to “infer ... a legislative construction from the chapter in which a provision appears” override the plain terms of § 1346(b) as revised. No inference is required to conclude that the FTCA jurisdictional provision is no longer “subject to” the limitations section. Instead, one need only read § 1346(b) to determine that that is so; again, chapter 161 is not chapter 171, period. Thus, although the Court “does not presume that the 1948 revision worked a change in the underlying substantive law unless an intent to make such a change is clearly expressed,” John R. Sand & Gravel Co., 552 U.S. at 136, 128 S.Ct. 750 (internal quotation marks omitted), that intent was clearly expressed when the cross-reference to § 1346(b) was revised to include many provisions of the FTCA but not the applicable limitations period.
Under Judge Tashima’s “inference” approach to the clear statutory language, it would not have mattered what Congress wrote into the FTCA’s jurisdictional grant in 1948 (and later corrected in 1949). Congress could have revised the statute to read “Subject to the provisions of chapter 171” (as it eventually did); “Subject to the provisions of chapter 171 and 161”; or “Subject to the provisions of chapter 161,” and Judge Tashima’s interpretation would still be the same — “subject to any provision of the original FTCA as codified in 1946.”[9]
We hold, instead, that § 1346(b) means what it says: that the district courts “shall have exclusive jurisdiction of civil actions on claims against the United States! ] for money damages,” “[sjubject to the provisions of chapter 171.” 28 U.S.C. § 1346(b). The FTCA’s legislative history cannot supply a “clear statement” to the contrary. Accordingly, there is no contextual reason to think that the limitations period provisions are jurisdictional.[10]
*1045 c. Exceptions
In holding § 2401(b) “jurisdictional,” Marley found it significant that Congress “explicitly included some exceptions to the deadlines in § 2401(a), but included no such exceptions in § 2401(b).” 567 F.3d at 1037. Section 2401(a) provides, in relevant part, that an “action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.” 28 U.S.C. § 2401(a). Marley reasoned that “[bjecause Congress chose to extend the time limit in § 2401(a) under certain circumstances, but did not include any exceptions to the limitations period of § 2401(b), we must conclude that Congress intended the deadlines of § 2401(b) to be adhered to strictly.” 567 F.3d at 1037 (emphasis omitted).
That conclusion cannot be squared with Auburn Regional Medical Center, which rejected the argument that a statutory time limit “should be viewed as jurisdictional because Congress could have expressly made the provision nonjurisdictional, and indeed did so for other time limits in the [statute].” 133 S.Ct. at 825. Although “Congress’s use of certain language in one part of the statute and different language in another can indicate that different meanings were intended,” that interpretive principle cannot, without more, provide the “clear statement” required to classify § 2401(b) as “jurisdictional.” Id. at 825-26 (internal quotation marks omitted); see also Santos, 559 F.3d at 195-96.
d. Earlier Cases
Finally, unlike in Bowles, 551 U.S. at 210-13, 127 S.Ct. 2360, and John R. Sand & Gravel, 552 U.S. at 137-39, 128 S.Ct. 750, there has not been a venerable, consistent line of eases treating the FTCA limitations period as jurisdictional counseling against switching gears now. Although we have held that § 2401(b) is jurisdictional, see Marley, 567 F.3d at 1035-36 (citing Berti v. V.A. Hosp., 860 F.2d 338, 340 (9th Cir.1988); Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983); Blain v. United States, 552 F.2d 289, 291 (9th Cir.1977) (per curiam); Mann v. United States, 399 F.2d 672, 673 (9th Cir.1968)), unlike in Bowles and John R. Sand & Gravel, there is no Supreme Court precedent on the question. See Reed Elsevier, 559 U.S. at 173-74, 130 S.Ct. 1237 (Ginsburg, J. concurring) (rejecting citation to non-Supreme Court precedent because Bowles and John R. Sand & Gravel “relied on longstanding decisions of this Court typing the relevant prescriptions ‘jurisdictional’ ”) (emphasis in original). And we have also held otherwise in Alvarez-Machain I, 107 F.3d 696.
Further, the pr e-Alvarez-Machain I cases cited in Marley preceded both Irwin and the Supreme Court’s more recent decisions clarifying the distinction between jurisdictional and nonjurisdictional rules. Indeed, our pr e-Alvarez-Machain I decisions are emblematic of the “drive-by jurisdictional rulings” to which the Supreme Court has cautioned against giving “precedential effect” in its more recent cases. See Arbaugh, 546 U.S. at 511, 126 S.Ct. 1235. For example, Berti, a three-page opinion, labels § 2401(b) “jurisdictional,” but provides no analysis as to the meaning or significance of that term.[11] See Berti, 860 F.2d at 340. Accordingly, this is certainly not the “exceptional [case] in which *1046 a ‘century’s worth of precedent and practice in American courts’ rank [the] time limit as jurisdictional.” Auburn Reg’l Med. Ctr., 133 S.Ct. at 825 (quoting Bowles, 551 U.S. at 209 n. 2, 127 S.Ct. 2360).
e. Purpose
Finally, with regard to the particular role of the FTCA’s six-month limitations period for filing suit we “find no reason why [§ 2401(b) ] should be read ... [as] a prerequisite to the exercise of federal subject matter jurisdiction.” Payne, 653 F.3d at 870.
First, the consideration that the FTCA authorizes suits against the federal government does not, standing alone, supply such a reason. In so concluding, “[w]e ... have in mind that the [FTCA] waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended.” Kubrick, 444 U.S. at 117-18, 100 S.Ct. 352; see also Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). But the fact that the FTCA is predicated on a sovereign immunity waiver does not make the six-month filing deadline a jurisdictional prerequisite, not subject to equitable tolling. Although waivers must be “strictly construed,” Irwin explained that “[o]nee Congress has made such a waiver, ... making the rule of equitable tolling applicable to suits against the Government, in the same way that is applicable to private suits, amounts to little, if any, broadening of the congressional waiver.” Irwin, 498 U.S. at 94-95, 111 S.Ct. 453.
John R. Sand & Gravel, 552 U.S. 130, 128 S.Ct. 750, is not to the contrary. That ease did note that “[t]he Court has often read the time limits of these [sovereign immunity waiver] statutes as more absolute,” id. at 133-34, 128 S.Ct. 750, and “has sometimes referred to the time limits in such statutes as ‘jurisdictional.’ ”[12] Id. at 133-34, 128 S.Ct. 750 (citing Bowles, 551 U.S. at 210, 127 S.Ct. 2360). But John R. Sand & Gravel did not turn on any bright-line distinction between statutes of limitation that “protect a defendant’s case-specific interest in timeliness,” and those “limiting the scope of a governmental waiver of sovereign immunity.” 552 U.S. at 133-34, 128 S.Ct. 750. Instead, John R. Sand & Gravel reiterated and applied Irwin’s presumption that equitable tolling applies to statutes of limitations in suits against the government, distinguishing Irwin on the grounds that “Irwin dealt with a different limitations statute [that] ..., while similar to [§ 2501] in language, is unlike [§ 2501] in the key respect that the Court had not previously provided a definitive interpretation.” Id. at 137, 128 S.Ct. 750.
Second, there is no reason to think § 2401(b) more concerned with “achieving] a broader system-related goal” than simply with protecting the government’s “case-specific interest in timeliness.” Id. at 133, 128 S.Ct. 750. Holland is instructive in this regard. As noted above, Holland held that AEDPA’s statute of limitations in 28 U.S.C. § 2244(d) is not jurisdictional, and therefore is “subject to a ‘rebuttable presumption’ in favor ‘of eq *1047 uitable tolling.’ ” 130 S.Ct. at 2560 (quoting Irwin, 498 U.S. at 95-96, 111 S.Ct. 458). Doing so, Holland rejected the argument “that equitable tolling undermines AED-PA’s basic purposes.” Id. at 2562. While acknowledging AEDPA’s systemic goal of “eliminating] delays in the federal habeas review process,” Holland emphasized that AEDPA “[does] not seek to end every possible delay at all costs.” Id. Holland therefore declined to read § 2244(d) as indicating “congressional intent to close courthouse doors that a strong equitable claim would ordinarily keep open.” Id.
Section 2401(b) likewise does not evince congressional intent to foreclose the application of equitable principles for the sake of “broader system-related goals.” As Kubrick explained, § 2401(b)’s “obvious purpose[ ] ... is to encourage the prompt presentation of claims.” 444 U.S. at 117, 100 S.Ct. 352. That is consistent “with the general purpose of statutes of limitations: ‘to protect defendants against stale or unduly delayed claims.’ ” Credit Suisse Sec. (USA) LLC v. Simmonds, — U.S. -, 132 S.Ct. 1414, 1420, 182 L.Ed.2d 446 (2012) (quoting John R. Sand & Gravel, 552 U.S. at 133, 128 S.Ct. 750).
McNeil v. United States, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993), does not detract from our conclusion. McNeil strictly construed the administrative exhaustion requirement in 28 U.S.C. § 2675(a), holding that an FTCA action filed before exhaustion had been completed could not proceed in the district court even where the litigation had not substantially progressed. 508 U.S. at 111-13, 113 S.Ct. 1980. The exhaustion requirement, unlike the § 2401(b) limitations period, is tied by explicit statutory language to jurisdiction, and was deemed “jurisdictional” in Brady v. U.S., 211 F.3d 499, 502 (9th Cir.2000). The “straightforward statutory command” in § 2675(a), McNeil explained, served “[t]he interest in orderly administration of this body of litigation.” Id. at 112, 113 S.Ct. 1980.
Judge Bea maintains that McNeil’s concern about the “orderly administration of [FTCA] litigation” with respect to the exhaustion-of-remedies requirement in § 2675(a) compels us also to treat § 2401(b)’s six-month filing deadline as jurisdictional. We disagree. Strict enforcement of an exhaustion requirement serves to assure a particular administrative interest — namely, the interest in assuring that agency officials have a full opportunity to investigate and consult internally with regard to claims for compensation due to negligence by agency employees. Further, that purpose recognized by the Supreme Court in McNeil — reducing court congestion by keeping claims out of court until an administrative agency has had a chance to settle them — is not implicated by § 2401(b)’s sixth-month post-exhaustion limitations period. See id. at 111-12, 112 n. 8, 113 S.Ct. 1980. Where agency exhaustion is required, there is notice of the claim and of the need for information collection, as well as an opportunity to settle the claim, well before suit is filed in court.
. In short, nothing in the text, context, or purpose of § 2401(b) clearly indicates that the FTCA’s six-month limitations period implicates the district courts’ adjudicatory authority. We therefore hold that § 2401(b) is a nonjurisdictional claim-processing rule subject to the presumption in favor of equitable tolling, and so overrule Marley’s contrary holding.
4. The Irwin Presumption in Favor of Equitable Tolling
Having concluded that § 2401(b) is a nonjurisdictional statute of limitations subject to Irwin’s presumption in favor of equitable tolling, we must next determine whether that presumption has been overcome in this case. See Holland, 130 S.Ct. *1048 at 2560; Albillo-De Leon v. Gonzales, 410 F.3d 1090, 1098 (9th Cir.2005). “It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute. Congress must be presumed to draft limitations periods in light of this background principle.” Young v. United States, 535 U.S. 43, 49-50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (internal quotation marks and citations omitted). We must therefore ask whether “there [is] good reason to believe that Congress did not want the equitable tolling doctrine to apply” to § 2401(b). United States v. Brockamp, 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). There is no such reason.
As an initial matter, we note that the Irwin presumption regarding the tolling of limitations periods in suits against the federal government is particularly strong in FTCA cases. Various provisions of the FTCA confirm that suits against the government are to be treated no differently than suits against private defendants.
For example, § 2674, governing the “Liability of [the] United States,” states that “[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.” 28 U.S.C. § 2674 (emphasis added); see Arteaga, 711 F.3d at 833. Likewise, § 1346(b)(1) grants the district courts exclusive jurisdiction over civil actions against the government “under circumstances where the United States, if a private person, would be liable.” Id. § 1346(b)(1) (emphasis added). Thus, as a general matter, the FTCA places suits against the United States on equal footing with suits against private individuals.
The Irwin presumption is further strengthened by the “discovery” rule applicable to § 2401(b): A plaintiff is required to file her claim with the relevant federal agency “within two years after such claim accrues,” id. § 2401(b). Applying the common law discovery rule — which does not appear in the statute — courts view a claim as “ ‘accruing]’ within the meaning of [§ 2401(b) ] when the plaintiff knows both the existence and the cause of his injury.” See Kubrick, 444 U.S. at 119-21 and n. 7, 100 S.Ct. 352. As a practical matter, this common law rule “extends the statute of limitations by delaying the date on which it begins to run.” Arteaga, 711 F.3d at 833. Application of a common law discovery rule not enunciated in the statute to aspects of § 2401(b) reinforces the notion that the FTCA’s statutes of limitations admit of common law exceptions.
Without the discovery rule, the deadlines contained in § 2401(b) would closely resemble a “statute of repose”: “a fixed, statutory cutoff date, usually independent of any variable, such as claimant’s awareness of a violation.” Munoz v. Ashcroft, 339 F.3d 950, 957 (9th Cir.2003). “[L]ike a jurisdictional prerequisite,” a statute of repose is not subject to equitable tolling. Albillo-De Leon, 410 F.3d at 1097 n. 5; see also Lampf Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); Albano v. Shea Homes Ltd. P’ship, 634 F.3d 524, 534-36 (9th Cir.2011). While a nonjurisdictional statute of limitations “bars plaintiff[s] from bringing an already accrued claim after a specified period of time,” a statute of repose “terminates a right of action after a specific time, even if the injury has not yet occurred.” Fields v. Legacy Health Sys., 413 F.3d 943, 952 n. 7 (9th Cir.2005).[13]
*1049 Far from setting a fixed cutoff date, § 2401(b) “is in the traditional form of a statute of limitations.” Johnson v. Aljian, 490 F.3d 778, 781 n. 12 (9th Cir.2007). As such, just as it is subject to the common law discovery rule, so the presumption favoring equitable tolling applies.
That § 2401(b) acts as a condition on the FTCA’s waiver of sovereign immunity does not alter our conclusion, essentially for the same reasons discussed earlier with regard to the jurisdictional question. With or without a waiver of sovereign immunity, the key inquiry, following Irwin, remains whether equitable tolling “is inconsistent with the text of the relevant statute.”[14] United States v. Beggerly, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998); see also John R. Sand & Gravel, 552 U.S. at 139, 128 S.Ct. 750. For the reasons already discussed, nothing in § 2401(b) suggests that it is inconsistent with equitable tolling. To the contrary, the FTCA goes out of its way in its efforts to treat the United States the same as private tort defendants.
Neither Brockamp, 519 U.S. 347, 117 S.Ct. 849, nor Beggerly, 524 U.S. 38, 118 S.Ct. 1862, two cases in which the Supreme Court held the Irwin presumption rebutted, indicates that the same conclusion is appropriate here. Brockamp held that a statute of limitations for filing tax refund claims foreclosed application of equitable tolling, citing as evidence of Congress’s intent the statute’s “highly detailed,” “technical,” and “unusually emphatic form.” 519 U.S. at 350, 117 S.Ct. 849. Brockamp further emphasized that “tax law,” the subject matter of the statute of limitations in that case, “is not normally characterized by case-specific exceptions reflecting individual equities,” given the more than “200 million tax returns” and “more than 90 million refunds” processed each year. Id. at 352, 117 S.Ct. 849. Beggerly, in turn, determined that an “unusually generous” twelve-year statute of limitations was “incompatible” with equitable tolling, in large part because the underlying subject matter concerned “ownership of land,” *1050 and equitable tolling would “throw a cloud of uncertainty over [property] rights.” 524 U.S. at 48-49, 118 S.Ct. 1862.
For reasons similar to those relied upon in the Supreme Court’s more recent Holland decision, the statute of limitations here “differs significantly from the statutes at issue in [Brockamp ] and [.Beggerly ].” Holland, 130 S.Ct. at 2561. Holland held AEDPA’s one-year statute of limitations in 28 U.S.C. § 2244(d) nonjurisdictional and “subject to a ‘rebuttable presumption’ in favor ‘of equitable tolling.’ ” Id. at 2560 (quoting Irwin, 498 U.S. at 95-96, 111 S.Ct. 453) (emphasis omitted). Applying that presumption, Holland, explained that, unlike the statute of limitations at issue in Brockamp, § 2244(d) “does not contain language that is ‘unusually emphatic,’ nor does it ‘re-iterat[e]’ its time limitation.” Id. at 2561. Moreover, “unlike the subject matters at issue in both Brockamp and Beggerly — tax collection and land claims — AEDPA’s subject matter, habeas corpus, pertains to an area of the law where equity finds a comfortable home.” Id. Accordingly, “neither AEDPA’s textual characteristics nor the statute’s basic purposes ‘rebut’ the basic presumption set forth in Irwin.” Id. at 2562.
The same conclusion applies to § 2401(b). As discussed above, the FTCA’s limitations provision is not cast in particularly emphatic language given its provenance; nor is it unusually generous. See Part II.A.3. And, unlike the limitations provision in Brockamp, § 2401(b) does not “reiterate[ ] its limitations several times in several different ways.” Brockamp, 519 U.S. at 351, 117 S.Ct. 849. Instead, § 2401(b) “reads like an ordinary, run-of-the-mill statute of limitations,” reflecting its period of enactment. Holland, 130 S.Ct. at 2561.
Furthermore, like the statute of limitations at issue in Holland, § 2401(b) “pertains to an area of the law where equity finds a comfortable home.” Id. As Irwin noted, “[t]ime requirements in lawsuits between private litigants are customarily subject to ‘equitable tolling.’ ” 498 U.S. at 95, 111 S.Ct. 453. And, as discussed above, the FTCA places tort suits against the United States on equal footing with tort suits against private individuals, exposing the government to liability “in the same manner and to the same extent as a private individual under like circumstances.” 28 U.S.C. § 2674. That Congress saw fit to include a time limit on such claims without any specific limitations on tolling indicates, if anything, that it intended to allow the operation of normal equitable tolling principles that would be applicable in ordinary tort suits against private individuals, not that it harbored an intention otherwise.
Rouse v. United States Department of State, 567 F.3d 408 (9th Cir.2009) (analyzing the Privacy Act’s two-year statute of limitations, 5 U.S.C. § 552a(g)(5)), reached a similar result to the one we reach here. In that case, a U.S. citizen sued the “U.S. Department of State under the Privacy Act for damages arising from his imprisonment in a foreign country.” 567 F.3d at 412. Rouse held, first, that the citizen’s claims were “sufficiently similar to traditional tort actions such as misrepresentation and false light to warrant the application of Irwin’s rebuttable presumption.” Id. at 416. Next, Rouse distinguished § 552a(g)(5) from the limitations provisions at issue in Brockamp and Beggerly, noting that § 552a(g)(5) lacked “detailed], ... technical language” and did not concern an “area[ ] of law where the running of a defined statute of limitations is of special importance.’ ” Id. at 417 (first alteration in original) (internal quotation marks omitted). Rouse therefore concluded that the Irwin presumption had not been rebutted in that case.
*1051 Finally, for the reasons similar to those we surveyed in declining to infer § 2401(b)’s “jurisdictional” status from other FTCA provisions and subsection (a) of § 2401, see supra, Part ILA.3, Congress’s decision to include explicit exceptions in other FTCA limitations provisions does not rebut the Irwin presumption.[15] As Holland explained, the fact that a statute “is silent as to equitable tolling while containing one provision that expressly refers to a different kind of tolling” does not foreclose the application of equitable tolling. 130 S.Ct. at 2561-62; see also Young, 535 U.S. at 53, 122 S.Ct. 1036 (rejecting the argument that an “express tolling provision, appearing in the same subsection as the [limitations] period, demonstrates a statutory intent not to toll the [limitations] period”).
In short, the Irwin presumption is not overcome. Nothing in § 2401(b)’s text or context indicates that Congress intended to preclude courts from ever applying equitable tolling to claims filed outside of the six-month limitations period.
B. Wong Is Entitled to Equitable Tolling
Concluding, as we do, that equitable adjustment of the limitations period in § 2401(b) is not prohibited, does not decide under what circumstances equitable tolling may be appropriate. Whether a particular untimely claim may be excused for a particular reason varies with the reason. We decide only that under the circumstances presented here, the usual principles governing equitable tolling apply and we can find no “good reason to believe that Congress did not want the equitable tolling doctrine to apply.” Brockamp, 519 U.S. at 350, 117 S.Ct. 849.
We assume for present purposes, without deciding, that Wong’s FTCA claim was filed in the district court too late. In doing so, we pause to note that whether this is so depends on: (1) whether the claim could be considered filed in the district court at a point earlier than the amendment actually adding the FTCA claim was filed; and (2) whether, if so, the relevant filing date was (a) November 14, 2001, the date Wong’s formal motion to file the amended complaint was filed; (b) November 20, 2001, the date as of which the motion to file the amended complaint requested that the complaint be amended; or (c) December 10, 2001, the date Wong’s Reply Memorandum on the motion to amend, which reiterated the request to amend, was filed. Adopting the first of these possible dates would create its own timeliness problem — whether the court claim was filed too early — under McNeil, 508 U.S. at 111-13, 113 S.Ct. 1980; adopting the second might also raise a McNeil problem.[16]
Although there may be a defensible road through this thicket yielding the result that the FTCA claim was timely filed, at least constructively, cf. Fed.R.Civ.P. 15(c), reaching that result would entail one or more novel rulings concerning when FTCA claims added by amendment are consid *1052 ered filed. Moreover, and notably, any such ruling would in all likelihood itself rest on an equitable adjustment of the usual application of limitations periods, because some form of constructive filing date, different from the date the amended complaint was actually filed in the district court, would be required. In the end, then, there is little difference in the underlying justification between applying traditional equitable tolling principles and devising a novel equitable solution to the filing date problem in this case. We therefore proceed along the established, traditional route.
In applying equitable tolling, courts “follow[ ] a tradition in which courts of equity have sought to ‘relieve hardships which, from time to time, arise from a hard and fast adherence’ to more absolute legal rules, which, if strictly applied, threaten the ‘evils of archaic rigidity.’ ” Holland, 130 S.Ct. at 2563 (quoting Hazel—Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 248, 64 S.Ct. 997, 88 L.Ed. 1250 (1944)). Thus, the equitable tolling doctrine “enables courts to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct ... particular injustices.” Id. (internal quotation marks omitted) (alterations in original).
“[L]ong-settled equitable-tolling principles” instruct that “ ‘[generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.’ ” Credit Suisse, 132 S.Ct. at 1419 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (emphasis omitted)); see also Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir.2009). As to the first element, “[t]he standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances.” Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir.2011). Central to the analysis is whether the plaintiff was “without any fault” in pursuing his claim. Fed. Election Comm’n v. Williams, 104 F.3d 237, 240 (9th Cir.1996).
With regard to the second showing, “a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.” Holland, 130 S.Ct. at 2564 (internal quotation marks and citations omitted). Instead, a litigant must show that “extraordinary circumstances were the cause of his untimeliness and ... ma[de] it impossible to file [the document] on time.” Ramirez, 571 F.3d at 997 (internal quotation marks and citations omitted) (second alteration in original). Accordingly, “[e]quitable tolling is typically granted when litigants are unable to file timely [documents] as a result of external circumstances beyond their direct control.” Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir.2008).
Applying these longstanding principles in this case, we conclude that whatever may be the case regarding other bases for tolling, Wong’s circumstances easily justify equitable tolling. As noted, Wong’s claim was untimely because it was not filed within the six-month window running from December 3, 2001 — the date on which the INS denied Wong’s administrative claim— to June 3, 2002. That result was not the consequence of any fault or lack of due diligence on Wong’s part. If anything, Wong took special care in exercising due diligence: Wong first sought leave to file her amended complaint “on or after November 20, 2001,” which was, at the time that request was filed, the first day follow *1053 ing exhaustion of her administrative remedies on which Wong would have been permitted to file her claim in the district court. And, even after the INS denied her claim, thereby starting anew the six-month deadline under § 2401(b), see Lehman, 154 F.3d at 1014-15, Wong filed a Reply Memorandum reiterating her request to file an amended complaint including the FTCA claim. As the Magistrate Judge noted, it was “due solely to the delay inherent in the Magistrate Judge system” that no action was taken with respect to those requests until the six-month limitations period had already run. Moreover, by informing the parties and the court of her desire to file an FTCA claim well before the filing deadline and requesting leave to do so, Wong fulfilled the notice concern that partially underlies limitations statutes. See Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 352, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).
We are not persuaded by the government’s assertion that Wong was dilatory in seeking to file her claim because she did not expressly request a timely ruling from the district court. Nor are we persuaded that Wong should have filed an entirely new complaint alleging the FTCA claim rather than waiting for a ruling on the motion to amend. Wong was entitled to expect a timely ruling on her request to amend, which was made with a great deal of time to spare. And filing a new suit on the same facts as one pending would have been inefficient for all concerned — which is why amendments alleging new causes of action on the same factual allegations are permitted. See Fed.R.Civ.P. 15. Thus, Wong put forth the “effort that a reasonable person might be expected to deliver under ... her particular circumstances.” Busby, 661 F.3d at 1015.
In short, Wong’s claim was rendered untimely because of external circumstances beyond her control. In light of these circumstances, we conclude that equitable tolling properly applies to excuse Wong’s late-filed amended complaint, and that her FTCA claim against the United States therefore may proceed.
REVERSED and REMANDED.

. Marley dismissed Alvarez-Machain I as having "no precedential value” because the panel opinion in that case was vacated and the case was taken en banc. See Marley, 567 F.3d at 1037-38 (citing Alvarez-Machain v. United States (Alvarez-Machain III), 284 F.3d 1039 (9th Cir.2002)). But the opinion that was vacated by Alvarez-Machain III was not Alvarez-Machain I. Rather, it was a different opinion in the same case: Alvarez-Machain v. United States (Alvarez-Machain II), 266 F.3d 1045 (9th Cir.2001). Thus, Alvarez-Machain I was still good law when Marley was decided. The result was an intracircuit conflict, which we can resolve only through en banc proceedings. See Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1478-79 (9th Cir.1987) (en banc).

. Aloe Vera of America, Inc. v. United States, 580 F.3d 867, 872 (9th Cir.2009), called into question CedarsSinai’s continued vitality following the Supreme Court’s decision in John R. Sand & Gravel Co., 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). That statement was made without the benefit of the Supreme Court's most recent decisions clarifying the distinction between jurisdictional and nonjurisdictional rules.

. Contrary to Judge Bea’s assertion, John R. Sand & Gravel did not hold 28 U.S.C. § 2501 "jurisdictional” based on the “consequential” language of the statute. Rather, it held Irwin’s presumption of equitable tolling rebutted based on the fact that "the Court had ... previously provided a definitive interpretation” of § 2501. 552 U.S. at 137, 128 S.Ct. 750. Nor did Bowles hold that the limitations provision in 28 U.S.C. § 2107 was jurisdictional solely based on its "consequential” language; like John R. Sand & Gravel, Bowles rested largely on the "century's worth of precedent and practice in American courts” ranking "time limits for filing a notice of appeal” jurisdictional. 551 U.S. at 209 n. 2, 127 S.Ct. 2360.

. It is unclear how much weight the Bea dissent accords the term "forever.” For the most part, the dissent categorizes statutes that simply use "shall be barred” terminology as within its self-created "consequence” category. See Bea Dissent at 1066-68. But Judge Bea then devotes an entire section to the word "forever,” and writes that "[i]t is especially telling” that Congress included the term "forever barred" in § 2401(b), but did not do so in § 2401(a), "the very section that precedes the one here in issue.” Bea Dissent at 1068-70.
In fact, as we have noted, § 2401(a) does provide that an FTCA claim "shall be barred” unless it is filed within six years after the right of action accrues. See 28 U.S.C. § 2401(a); see also Act of June 25, 1948, chap. 646, 62 Stat. 971 (1948). Thus, the dissent seems to rest, at least in part, on the proposition that it is the word "forever” that transforms limitations language into the "consequential” variety. For reasons discussed in the text, the word "forever” cannot bear that weight.

. Judge Bea also takes issue with Partlow and Mount Hood Stages, supra, which, as discussed above, held statutes of limitation containing language similar to § 2401(b) subject to equitable tolling. Judge Bea questions the value of these precedents because they preceded the Court's more recent cases distinguishing between jurisdictional and nonjurisdictional rules. Bea Dissent at 84-87. As noted, however, later decisions by this Court and the Supreme Court affirm the availability of equitable tolling under 15 U.S.C. § 15b, the statute at issue in Partlow. See Hexcel Corp., 681 F.3d at 1060-61; Rotella, 528 U.S. at 561, 120 S.Ct. 1075. More fundamentally, these precedents undermine the notion that Congress intended through the use of magic words in the Clayton Act Amendments and FLSA limitations provisions to establish jurisdictional bars in statutes allowing for civil suits against private parties.

.Judge Bea’s reference to Kendall v. United States, 107 U.S. 123, 2 S.Ct. 277, 27 L.Ed. 437 (1883), as support for attributing jurisdictional meaning to the phrase "forever barred,” Bea Dissent at 1068-69, is misplaced. Though John R. Sand & Gravel did rely on Kendall, it did so not because of Kendall’s logic, but out of deference to "[b]a-sic principles of stare decisis,” John R. Sand & Gravel, 552 U.S. at 139, 128 S.Ct. 750, as the statute in John R. Sand & Gravel was the same court of claims statute that Kendall (and Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128 (1887), and Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)) had already interpreted. *1042 Id. at 134-35, 128 S.Ct. 750. Indeed, John R. Sand & Gravel recognized that the older cases on which it relied were out of step with Irwin, but justified that reliance on "Justice Bran-deist’s] ... observation] that ‘in most matters it is more important that the applicable rule of law be settled than that it be settled right.’ ” Id. at 139, 128 S.Ct. 750 (quoting Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (dissenting opinion)).

. The fact that this statute "producefd] an intracircuit split, several en banc dissents, and dozens of pages of analysis by the majority,” Tashima Dissent at 1058, does not mean that the cross reference to chapter 171 is itself ambiguous. While reasonable jurists may certainly debate the general equitable tolling question this case presents, the cross reference to chapter 171, and not to chapter 161, is plain as day.

. The original limitations provision in Section 420 of the Act provided:
Every claim against the United States cognizable under this title shall be forever barred, unless within one year after such claim accrued ... it is presented in writing to the Federal agency out of whose activities it arises, if such claim is for a sum not exceeding $1,000; or unless within one year after such claim accrued ... an action is begun pursuant to part 3 of this title. In the event that a claim for a sum not exceeding $1,000 is presented to a Federal agency as aforesaid, the time to institute a suit pursuant to part 3 of this title shall be extended for a period of six months from the date of mailing of notice to the claimant by such Federal agency as to the final disposition of the claim or from the date of withdrawal of the claim from such Federal agency pursuant to section 410 of this title, if it would otherwise expire before the end of such period.
60 Stat. 812, 845. As originally enacted, the FTCA did not require claimants to exhaust their administrative remedies. That requirement was added in 1966. See 28 U.S.C. § 2401(b) (1994); H.R.Rep. No. 89-1532 at 6-7 (1966); S.Rep. No. 89-1327 at 2-3 (1966).

. We note as well that the proposition that any requirement that the FTCA's jurisdictional grant is "subject to” is automatically a jurisdictional prerequisite is a questionable one. The fact that § 1326(b) requires plaintiffs to comply with certain requirements to file a claim against the United States does not mean that each and evety one of those requirements concern “a tribunal’s power to hear a case.” Union Pac. R.R., 558 U.S. at 81, 130 S.Ct. 584. Indeed, "subject to” originally encompassed section 411 of Title IV, which made the Federal Rules of Civil Procedure applicable in FTCA cases; under Judge Tashima’s approach, compliance with the Federal Rules would have thus been a jurisdictional requirement. "Subject to” is more sensibly read to mean that litigants have to follow the prescribed procedures, not that each and every one of those procedures, if not followed, gives rise to the "drastic” consequences that follow from lack of subject matter jurisdiction. See Gonzalez, 132 S.Ct. at 648. We have never held otherwise. And where the Supreme Court has held a specific provision in chapter 171 jurisdictional, it has not done so because every rule in chapter 171 is a jurisdictional requirement. See McNeil v. United States, 508 U.S. 106, 111-13, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); Smith v. United States, 507 U.S. 197, 199, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993).

. Aside from our holdings in Brady v. United States, 211 F.3d 499, 502-03 (9th Cir.2000), and Lesoeur v. United States, 21 F.3d 965, 967 (9th Cir.1994), which held, respectively, that the administrative exhaustion requirement in § 2675(a) and discretionary function exception in § 2680(a) are jurisdictional, we have not addressed whether any of the other provisions in chapter 171 of the FTCA set forth jurisdictional requirements. In holding § 2401(b) nonjurisdictional, we express no *1045 views as to whether the other provisions located in chapter 171 are jurisdictional.

. Blain, Mann, and Augustine, cited in Marley, addressed the two-year administrative claim limitation period in § 2401(b), not the six-month post-exhaustion period. See Blain, 552 F.2d at 291; Mann, 399 F.2d at 673; Augustine, 704 F.2d at 1077.

. The Court’s other recent cases discussing the distinction between jurisdictional and nonjurisdictional statutes, including Auburn Regional Medical Center, - U.S. -, 133 S.Ct. 817, Gonzalez, -U.S. -, 132 S.Ct. 641, Henderson, - U.S. -, 131 S.Ct. 1197, Holland, 560 U.S. 631, 130 S.Ct. 2549, and Bowles, 551 U.S. 205, 127 S.Ct. 2360, also involve lawsuits against governmental entities. But they were not lawsuits in federal court against the federal government, and so may not raise precisely parallel sovereign immunity concerns.

. In Munoz, for example, we held that section 203 of the Nicaraguan Adjustment and Central American Relief Act, Pub.L. No. 105— Í00, 111 Stat. 2160 (1997), was a statute of repose, because it contained “fixed, statutory cutoff date[s]” requiring an alien to file an *1049 application for relief by April 1, 1990 or December 31, 1991. The statute did " 'not await a specific event to start the deadline clock,’ ” but " '[r]ather ... served as the endpoint of the definite time period in which Congress would permit [applicants] to file applications.' ” 339 F.3d at 957 (quoting Iacono v. Office of Pers. Mgmt., 974 F.2d 1326, 1328 (Fed.Cir.1992) (emphasis omitted)).

. The Supreme Court has, at times, indicated that equitable considerations are less likely to apply to limitations provisions limiting the scope of a governmental waiver of sovereign immunity. See John R. Gravel & Sand, 552 U.S. at 133-34, 128 S.Ct. 750; Soriano, 352 U.S. at 275-77, 77 S.Ct. 269. Most notably, Soriano declined to equitably toll the statute of limitations for filing a claim in the Court of Claims, 28 U.S.C. § 2501, explaining "that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.” See 352 U.S. at 275-76, 77 S.Ct. 269.
Noting that the Court’s "previous cases dealing with the effect of time limits in suits against the Government have not been entirely consistent,” Irwin discussed the result in Soriano, and concluded that its holding did not apply to the thirty-day time limit in Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16(c). Irwin, 498 U.S. at 94-95, 111 S.Ct. 453. Instead, Irwin explained, "this case affords us an opportunity to adopt a more general rule to govern the applicability of equitable tolling in suits against the Government,” namely, the rebuttable presumption in favor of tolling. Id. at 95-96, 111 S.Ct. 453. In announcing this "general prospective rule,” John R. Sand & Gravel, 552 U.S. at 137, 128 S.Ct. 750, Irwin did not expressly overrule Soriano, but made clear that Soriano is not to be read to proscribe the application of equitable doctrines to limitations on waivers of sovereign immunity in every case.

. For example, the revisions of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the “Westfall Act”), Pub.L. No. 100-964, §§ 5-6, 102 Stat. 4563, 4564-65 (1988), to 28 U.S.C. § 2679(d)(5), provide that an action dismissed under the exhaustion requirement in 28 U.S.C. § 2675(a) is considered timely under 28 U.S.C. § 2401(b) if the administrative claim would have been timely had the claim been filed on the date of commencement of the civil action. See 28 U.S.C. § 2679(d)(5).

. As noted, Wong’s initial motion seeking leave to amend sought to treat the INS’s inactivity regarding her claim as the agency’s final decision under § 2675(a), but preceded the INS’s denial of her claim on December 3, 2001. See supra part I.B.